## Brown v. Gloeckner et al.

*Fingold & Fingold*, for plaintiff.

*David R. Levin*, for defendants.

McNAUGHER, P. J., June 3, 1955.—Defendants filed preliminary objections to the complaint in equity in this case and these are now before us for disposition.

Pursuant to the Housing and Redevelopment Assistance Act of May 20, 1949, P. L. 1633, 35 PS §1661, on April 24, 1950, the State Planning Board published invitations to bid on State Subsidized Housing Project No. 24, Allegheny County (North). Individual defendants John F. Gloeckner and A. J. Aberman, being interested in offering a bid, and in compliance with the requirements of the Planning Board, formed a special purpose corporation (exhibit E, plaintiff's complaint), known as the Shaler Corporation, one of the defendants, a bid was offered by that defendant and accepted, and in furtherance of the proposal a written agreement was entered into by and on behalf of the Commonwealth of Pennsylvania through the State Planning Board with Shaler Corporation, whereby the latter agreed to construct and operate the project.

Thereupon the Shaler Corporation on October 19, 1951, entered into an agreement with plaintiff, H. Justin Brown, a contractor, for the construction. The land upon which the buildings were to be erected was owned by defendant Crescent Realty and Investment Company. Due to reasons which will later appear, the operations were not begun and the project was abandoned.

Plaintiff's complaint, filed December 29, 1954, for recovery of damages of $67,082, claimed to be due for breach of contract, avers, inter alia, that individual defendants Gloeckner and Aberman own all the stock of and control the Shaler Corporation; that Aberman owns and controls the Crescent Realty and Investment Company: that the Shaler Corporation owns all the stock of defendant Glenshaw Gardens, Inc.; and that the Shaler Corporation received from the Planning Board a first payment on account of its agreement in the sum of $120,470. The prayers of the bill are as follows: that the Shaler Corporation be declared a trustee of all assets in its possession or control; that the sum claimed by plaintiff be declared the property of plaintiff; that payment be required thereof and that judgment be entered against each of the defendants for said sum, plus interest, and that they be restrained from selling, mortgaging, disposing of, or encumbering their assets and from dissolving or merging with any other corporation.

Defendants' preliminary objections allege, inter alia, that plaintiff has failed to show that he is entitled to relief either at law or in equity; that there was no performance under plaintiff's contract; that defendants Gloeckner, Aberman, Glenshaw Gardens, Inc., and Crescent Realty and Investment Company were not parties to the contract and that therefore no breach thereof can be attributable to them; that plaintiff has failed to comply with certain conditions precedent to the effectiveness of the contract; that plaintiff is guilty of laches, and that damages are not specifically pleaded.

The first question is whether equity has jurisdiction of the case. It is well settled that when an adequate remedy at law exists no action can be brought in equity. The gist of plaintiff's complaint is breach of contract and what is ultimately sought is money damages. In ordinary circumstances the remedy

would be by action in assumpsit and only against defendant Shaler Corporation. But plaintiff seeks as well to bind the individual and the other corporate defendants on the basis that, because of an alleged relationship to the Shaler Corporation, they are also liable to him on the theory that the court should look behind the corporate entities and pierce the corporate veil. We cannot agree with this contention. As stated in Barium Steel Corp. v. Wiley, 379 Pa. 38, 47:

"There appears to be no clear test or well settled rule either in Pennsylvania or in the Country at large as to exactly when the corporate veil can be pierced and when it may not be pierced . . . It is well established that a corporation is a distinct and separate entity, irrespective of the persons who own all its stock. The fact that one person owns all of the stock does not make him and the corporation one and the same person, nor does he thereby become the owner of all the property of the corporation."

There is here nothing set forth in the complaint to show that any fraud was perpetrated on plaintiff or that there was any concealment. He knew by the form of the agreement that he was dealing with the Shaler Corporation as such and that reimbursement for services rendered under his contract must be sought from that corporation and it alone. None of the other defendants was a party to the agreement and no misrepresentation is specifically alleged by anyone. Plaintiff was dealing with a corporate entity and has no ground for calling upon the court to disregard the validity of that entity.

The alleged fact that the Shaler Corporation received a first payment from the State Planning Board for the construction of the project and afterward made certain disposition of it after it appears performance became impossible, gives plaintiff no right to come into equity on the allegation that the Shaler Corporation became a trustee of a part of said amount

in favor of plaintiff. Only the Planning Board and the Commonwealth of Pennsylvania could complain if the Shaler Corporation or others received funds and failed to account for them.

As plaintiff has no standing in equity, so also he has none at law, even against the Shaler Corporation. The agreement contains conditions precedent to its effectiveness. Article 2 of the construction contract provides:

"The work to be performed under this contract shall be commenced upon receipt by the contractor of a proceed order from the builder-operator."

Plaintiff admits that no such "proceed order" was given him. Article 8 provides, inter alia:

"It is agreed between the parties that this contract shall not become effective until approved by the Board in writing."

It is not averred that the board's approval in writing was given. Article 12 provides, inter alia:

"Notwithstanding any other provision of this agreement or the specifications which form a part hereof, the Contractor shall furnish at its own expense all building and other permits, licenses . . . necessary for the construction of the project as required."

Not only did plaintiff not secure a permit but it was refused by Shaler Township and also the township passed a zoning ordinance preventing the construction of the housing project.

It is unnecessary to discuss other objections raised by defendants in view of the disposition we are making of the case.

Apparently at the time counsel filed their brief in behalf of plaintiff they also placed with the papers a carbon copy of an "Amended Complaint". This has not been filed and could not be without an order of court. Therein it is averred that the Commonwealth of Pennsylvania had available various mimeographed

forms of contracts and that the one employed by plaintiff and defendant Shaler Corporation was the wrong one and that had the proper form been used, the provision agreed to that the "contract should not become effective until approved by the Board in writing" would not have been included; that at the time of the execution of the contract it was agreed between the parties that the provision would be deleted and the failure to do so was because of fraud, accident, or mistake of defendants; and also it is averred that at the execution of the agreement defendants informed plaintiff that the transactions required by the Planning Board were matters between defendants and the board and were no concern of plaintiffs; that if approvals were necessary defendant would secure them and that defendants were to procure the building permit; that at the time of the execution of the contract defendants informed plaintiff that it was approved by the Planning Board, and if actually it was not authorized, defendants fraudulently induced plaintiff to execute it; that the agreement was approved by the Planning Board, as evidenced by certain exhibits, and that the check payable to the Shaler Corporation from the Commonwealth in the amount of $120,470, in pursuance of the original contract between the Shaler Corporation and the Commonwealth, constituted such approval.

It is our opinion that the proposed amendment should not be permitted. It is largely in direct contradiction of the terms of the written instrument on which plaintiff has based his suit. No suggestion whatever was made in the complaint of any contemporaneous oral agreement, not to mention the numerous items now set forth. To allow the amendment it seems to us would be to countenance a complete shift of position for the purpose of avoiding the consequences of fatal defects in the case.

Because there is no basis for a suit in equity or at law, plaintiff's bill will be dismissed.

*Order*

And now, to wit, June 3, 1955, after consideration thereof, the preliminary objections of defendants are sustained and plaintiff's bill of complaint is hereby dismissed, and plaintiff's oral motion for leave to amend the complaint is hereby refused.